# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **FREDERIC LUBRON BIRGANS**<br>    **LA. DOC # 564392** | **CIVIL ACTION NO. 3:12-cv-2568** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE DONALD E. WALTER** |
| **WARDEN JOHNNY SUMLIN** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* Petitioner Frederic L. Birgans, an inmate in the custody of Louisiana's Department of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on September 25, 2012. [doc. # 1]. Petitioner attacks his 2010 conviction for possession of marijuana with intent to distribute and the seventeen-year hard labor sentence imposed by the Fourth Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> On Saturday, January 31, 2009, around 1:30 a.m., defendant was driving a rental car from Dallas, Texas to Hillsboro, Alabama on I–20 in Ouachita Parish. Trooper Michael Linton clocked defendant driving 70 miles per hour in a 60 mile per hour zone. The trooper followed defendant some distance, noticing some weaving within his lane of traffic. The trooper chose not to stop defendant until he had crossed the Ouachita River because the portion of the interstate over the river is elevated with no safe place to pull over. Once over the bridge, the trooper turned on his lights, and at that moment the camera in his vehicle was automatically activated. Linton initially forgot to activate his microphone, so there is no audio at this point.
>
> Defendant produced his license, rental agreement and insurance card, advising that

his address on the license was wrong, but correct on the insurance card.

Defendant insisted he was not driving 70 mph. Linton thought defendant looked nervous and sounded as if he had "dry-mouth." When asked about any prior traffic violations, he said he had paid off all except one, and that was the purpose of this trip to Alabama.  Defendant told the trooper that court was to be held on Tuesday and that he was going to Alabama early so he could watch the Super Bowl there. The trooper thought this to be odd. He asked defendant if he had a criminal record for drugs, which was first denied, then admitted without explanation.

When the trooper took defendant's documents back to his unit, he realized he had not turned his microphone on. He turned it on and gave a short narrative of what had transpired during the stop to that point. The computer check revealed that the name on the car rental agreement and insurance card was that of defendant's son, Brandon. As defendant was listed on neither document, he was not an authorized driver of the rental car, and the insurance card did not cover him. At this point, Officer Chris Ballard with the Monroe Police Department arrived to provide backup.

Linton ran a criminal background check and found defendant had been convicted of distributing marijuana several times in his past. The trooper prepared a written consent to search and got defendant to exit the car. Linton told defendant that he did not intend to give him a citation but continued to question him about the documents and the lack of a correct address. Defendant could not recall his home municipal number, further convincing the trooper of his nervousness. Defendant did not sign the written consent to search and became argumentative.

Linton called a K–9 unit, advising defendant that if the dog did not alert, he would be free to go. While waiting for the canine unit, defendant asked if he could get his jacket and cigarettes from the car. Linton opened the car's back door and quickly retrieved the jacket, which contained the cigarettes in a pocket.

Seven minutes after the call, Trooper John Peters arrived on the scene with the dog, Andy. Peters asked Linton to turn off the engine of defendant's car so that Andy could walk around the car safely. Linton did so. There was no search at this point.

Andy and his handler walked around the car. The dog, according to his handler, subtly alerted to the driver's side door.

The troopers:

• searched the car as a result of Andy's alert;

• found in the trunk a black suitcase containing 11.5 pounds of vacuum-sealed

2

packages of marijuana mixed with dryer sheets and a deodorizer ball;

• handcuffed and arrested defendant, and administered Miranda warnings;

• called Agent Shelton Z. Crooks to pick up the car and the marijuana;

• took defendant to State Police Headquarters; and

• booked defendant with two traffic tickets plus the felony drug charge.

The case was assigned to Judge Carl V. Sharp. A 72–hour hearing was held and defendant was appointed counsel, Ms. Elizabeth Brown. On March 16, 2009, defendant was arraigned via video transmission. Another attorney from the Ouachita Parish Indigent Defender's Office, Lee Perkins, appeared with defendant, waiving formal arraignment, and pleading him not guilty.

At least three times prior to and during trial, defendant insisted that he had never been arraigned. He claimed that nobody ever asked him how he pled. Each time defendant objected, the trial judge told him he had been arraigned via video on March 16, 2009. Eventually the state offered a plea bargain whereby defendant would plead guilty and serve 10 years, and in exchange, the state would not charge him as a habitual offender. Defendant rejected that offer and countered with his own that he would serve five years and reserve the right to appeal a motion to suppress under *State v. Crosby*, 338 So.2d 584 (La.1976), but the state rejected that proposal.[1]

Counsel filed motions to suppress evidence on defendant's behalf, each being denied. The motions related to:

• a challenge of the initial stop, because of no corroboration of bad driving;

• the missing audio on the first portion of the tape; and

• the trooper's initial representation that he was not going to ticket defendant.

The trial began on February 1, 2010, and prior to opening argument, defendant asked the trial court to let him represent himself. The trial judge discouraged defendant from taking this action, but he eventually allowed him to do so with Ms. Brown acting as standby counsel. At trial he inexpertly attempted to impeach the credibility of the witnesses.

---

[1] The timing of this alleged plea bargain proposal, and in fact, whether it ever existed, is unclear.  Defendant has raised an issue relating to the alleged agreement as an assignment of error. Therefore, it is mentioned at this point in the facts because defendant said it happened then.

3

The jury convicted defendant as charged. He filed a "Motion for Ineffective Assistance of Counsel," which the trial court denied.[2]  The court sentenced defendant to 17 years at hard labor, denying defendant's oral motion to reconsider sentence.

*State v. Birgans*, 57 So. 3d 478, 479-81 (La. App. 2 Cir. 2011) (some internal footnotes omitted).

Petitioner appealed to the Second Circuit Court of Appeal on September 22, 2010, and raised three counseled assignments of error and seven *pro se* assignments of error.  [doc. # 36-3, p. 30, 64].  Petitioner's first counseled assignment of error and fourth *pro se* assignment of error alleged that he was not properly arraigned; the second counseled assignment of error and three of his *pro se* assignments raised Fourth Amendment claims concerning the lawfulness of the traffic stop and subsequent search and seizure; the third counseled assignment of error argued that he was prevented from arguing facts to support a request for juror nullification; in his fifth *pro se* assignment, Petitioner argued that he was denied the benefits of a plea bargain; in his sixth *pro se* assignment, he argued that he was denied compulsory process; and, in his seventh and final *pro se* assignment of error, he alleged that his waiver of trial counsel was not voluntary.  *Id.*

The Second Circuit affirmed Petitioner's conviction and sentence on January 26, 2011. *Birgans*, 57 So. 3d at 489.  The Louisiana Supreme Court denied Petitioner's application for writs on February 10, 2012.  *State v. Birgans*, 80 So. 3d 475 (La. 2012).  Petitioner did not seek further direct review before the United States Supreme Court.

Petitioner filed numerous *pro se* post-conviction review pleadings before the trial court while his writ application to the Louisiana Supreme Court was pending.  [*See* doc. # 38-2, p. 10]. In general, he claimed that he found "newly discovered evidence that the dash cam video from his traffic stop and subsequent arrest was significantly altered and edited."  [*See* doc. # 1-2, p.

---

[2] The court treated it as if it were a "Motion for a New Trial."

4

24].  On May 3, 2012, the trial court conducted an evidentiary hearing, and on May 29, 2012, the court denied Petitioner's claims.  *Id.*  Petitioner sought further collateral review before the Second Circuit Court of Appeal on September 15, 2012.  [doc. # 40-1, p. 60].  The Second Circuit denied the application on January 17, 2013, without comment.  [doc. # 40-1, p. 110].  The Louisiana Supreme Court likewise denied Petitioner's application on February 21, 2014.  [doc. # 40-4, p. 57].

Petitioner filed the instant Petition on September 25, 2012, requesting relief for the following claims: (1) Petitioner was not properly arraigned; (2) The evidence found in Petitioner's vehicle should have been suppressed; (3) The trial court improperly limited Petitioner's examination of witnesses; (4) The trial court should have required the State to present video evidence of the traffic infractions that led to Petitioner's traffic stop, rather than simply relying on the officers' testimony; (5) The canine sniff was unconstitutional; (6) The trial judge erred when he denied Petitioner's motion to suppress because he did not have enough video evidence; (7) The trial court erred in denying Petitioner's motion to suppress because it relied on the State's improperly edited video from the officer's patrol car; (8) The evidence introduced at the motion to suppress hearing failed to establish reasonable suspicion or probable cause; (9) Petitioner was denied an opportunity to plead guilty to the charged crime and receive a lesser sentence; and (10) The trial court erred when it denied Petitioner's application for post-conviction relief.  [doc. # 1].[3]

The matter is now before the Court.

---

[3] The Court held the cause in abeyance until Petitioner exhausted his state court remedies. [doc. # 9].

**Law and Analysis**

**I.      Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. §

2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider

*habeas* claims.  After the state courts have "adjudicated the merits" of an inmate's complaints,

federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*,

131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state

court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as

opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-

court decision."  *Id.* at 740.  Under the "unreasonable application" clause, a federal *habeas* court

may grant the writ only if the state court "identifies the correct governing legal principle from . . .

[the Supreme Court's] decisions but unreasonably applies the principle to the facts of the

prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## II. Petitioner's Claims

A. <u>Claim One: Arraignment</u>

Petitioner first claims that he was not properly arraigned.  [doc. # 1, p. 9].  He claims, specifically, that no one informed him of the charges against him, no one asked him how he wished to plea, and he never asked his appointed counsel to waive arraignment and enter a not guilty plea on his behalf.  *Id.*

The Second Circuit Court of Appeal set forth the applicable background, as well as its ruling, as follows:

> [D]efendant alleges that he was not properly arraigned. Even though counsel was appointed to represent him at the 72–hour hearing, he alleges that no attorney ever spoke to him or asked him if he wanted to waive formal arraignment or how he intended to plead. Instead, he complains that on March 16, 2009, at a video arraignment, a public defender waived formal arraignment and entered a plea of not guilty for him. Somehow he alleges that this violated his right to due process.
>
> This issue is the reddest of all herrings. Perhaps the question to be asked is exactly what harm did defendant suffer? The answer is nothing.
>
> A logical starting point may be a quick review of La. C. Cr. P. art. 552, which lists the only four possible pleas: guilty, not guilty, not guilty by reason of insanity, and *nolo contendere*.
>
> Which pleas would he have preferred? Nothing in the record indicates a desire on his part to plead guilty or *nolo contendere*—just the opposite. And defendant has made no claim to have been insane at the time of the offense. The argument is completely without substance.

> The state argues that the video arraignment of defendant on March 16, 2009, was legal and properly conducted. The state points out that counsel, Ms. Brown, had been appointed to represent him at the 72–hour hearing. On the date of the hearing, the attorney who conducts the arraignments for the Indigent Defender Board, Mr. Perkins, appeared on his behalf for Ms. Brown. Therefore, there was an attorney present for defendant on that date. Defendant remained silent throughout the exchange and never objected to the attorney waiving formal arraignment or pleading not guilty. The trial court spoke directly to defendant by video and informed him of his right to choose a bench trial or a jury trial. If a defendant is silent at arraignment, the result is the entry of a not guilty plea. See La. C. Cr. P. art. 554. The trial judge clearly explained this to him on May 14, 2009. We fail to see any harm suffered by defendant on this issue. These assignments of error lack merit.

*Birgans*, 57 So. 3d at 481-82.

The record reflects that Petitioner was indeed arraigned on March 16, 2009.  [doc. # 38]. As the Second Circuit observed, Attorney Perkins waived formal arraignment and entered a plea of not guilty on Petitioner's behalf.  *Id.*  Although the record does not reflect whether Petitioner gave his attorney permission to waive arraignment, it does show that Petitioner never voiced any objection to the waiver.  Petitioner's silence belies any contention that he never gave counsel permission to waive arraignment.

In any event, "it is well established that formal arraignment is not constitutionally required if it is shown that the defendant knew what he was accused of and is able to defend himself adequately."  *Dell v. State of La.*, 468 F.2d 324, 325 (5th Cir. 1972) (citations omitted). Here, contrary to Petitioner's assertion, the trial judge did apprise Petitioner of the charges against him, once at the 72-hour hearing, [doc. # 387, p. 63], and again immediately prior to trial, [doc. # 34, p. 60].  Furthermore, Petitioner was given a full opportunity to contest those charges and defend himself at his subsequent jury trial.  Consequently, counsel's waiver, whether sanctioned by Petitioner or not, did not trespass on Petitioner's right to due process.  *See Garland*

*v. State of Washington*, 232 U.S. 642, 645 (1914) (holding that due process "does not require the state to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution.").  Petitioner has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, and the decision was not based on an unreasonable determination of the facts in light of the evidence.  As a result, this claim should be **DENIED**.

B. Claims Two, Five, Six, Seven, and Eight: Unlawful Traffic Stop and Subsequent Search

Petitioner raises five Fourth Amendment illegal search and seizure claims.  [doc. # 1, p. 9].  Claim Two, in brief, alleges that the State improperly introduced evidence seized from his vehicle because the officer that stopped the vehicle did not have reasonable suspicion for the stop or probable cause for the ensuing search.  *Id.* at 10.  In Claim Five, Petitioner argues that the canine sniff was unconstitutional.  *Id.* at 13.  In Claim Six, Petitioner claims that the trial judge erred when he denied Petitioner's motion to suppress the evidence found in his vehicle.  *Id.* at 14.  Similarly, in Claim Seven, Petitioner argues that the trial judge erred in denying the motion to suppress because he did not have video evidence of the initial stages of the traffic stop.  *Id.* at 16.  Finally, in Claim Eight, Petitioner contends that all of the evidence introduced at the motion to suppress hearing failed to establish reasonable suspicion for the traffic stop or probable cause for the subsequent search.  *Id.* at 17.

Petitioner is not entitled to relief on these claims.  The Supreme Court held, in *Stone v. Powell*, 428 U.S. 465, 482 (1976), that when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  The Fifth Circuit applies this bar to *habeas* review as long as the State afforded the defendant an opportunity to litigate the issue, whether or not the defendant availed himself of the opportunity.  *See ShisInday v. Quarterman*, 511 F.3d 514, 525 (5th Cir. 2007) (*citing Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002); *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980) ("[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone v. Powell*.").  "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits, *Stone* forecloses review."  *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006) (citation and internal quotation marks omitted).

Here, Petitioner does not argue that the Louisiana courts routinely or systematically prevent the actual adjudication of Fourth Amendment claims.[4]  Moreover, the Court notes that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  *Bailey v. Cain*, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007).  Accordingly, Petitioner's Fourth Amendment claim is barred from review and should be **DENIED**.

---

[4] In fact Petitioner adjudicated the majority of these Fourth Amendment claims prior to trial.  [doc. # 33-2, p. 20].  The trial judge ruled, "I'm implicitly ruling that the grounds for the stop, the initial stop, were valid.  So I'm finding probable cause and I'm also overruling your motion to suppress."  *Id.*

10

C. Claim Three: Compulsory Process and Jury Nullification

Petitioner claims, convolutedly, that when the trial court improperly limited his right to impeach the testifying officers, it undermined his ability to convince the jury that it could ignore uncontradicted evidence and instructions from the trial judge.[5]   [doc. # 1, p. 12].

The Second Circuit Court of Appeal explained Petitioner's claim, and proceeded to rule, as follows:

> [D]efendant argues jury nullification is a recognized practice which allows the jury to disregard uncontradicted evidence and instructions by the trial court.  *State v. Divers*, 38,524 (La.App.2d Cir.11/23/04), 889 So.2d 335, writ denied, 04–3186 (La.4/8/05), 899 So.2d 2, and cert. denied. He claims that jurisprudence has allowed jurors to return a lesser responsive verdict fully supported by the same evidence that would also demonstrate, beyond a reasonable doubt, that the charged crime occurred. *State v. Porter*, 93–1106 (La.7/5/94), 639 So.2d 1137.
>
> He further argues that he . . . sought to impeach the investigating officers by focusing on inconsistencies and issues related to the search. However, the trial court noted that the motion to suppress had been denied several times and informed defendant many times that the path he was pursuing was a question of law that was not within the purview of the jury's decision. Defendant argues that while the trial court was correct in holding that the jury does not decide issues of search and seizure, the court erred in restricting the defense  because the jury retained the power and authority to reject the state's case, for any reason, including by finding that the search was illegal. Therefore, he claims his impeachment of police officers over issues related to the stop should have been permitted.
>
> The trial court did not restrict defendant from asking appropriate questions of the witnesses. His problem lay in arguing his interpretation of the law with witnesses instead of asking questions. Any reasonable questions were unrestricted. The court did not err by illegally interfering with this attempt at jury nullification.

* * *

---

[5]  Petitioner also "voices displeasure with the fact that he sought discovery of every radio transmission from any patrol cars dispatched to the scene of his arrest and any video that might be available." *See Birgans*, 57 So. 3d at 487; [doc. # 1, p. 12].  However, this argument is conclusory and does not warrant relief. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding.").

> Birgans attempted to impeach the testimony of the trooper and convince the jury that the fruits of the search were illegally obtained, thereby providing the jury with a method by which it could ignore uncontradicted evidence and instructions by the judge.
>
> The trial court's action in limiting defendant to questioning witnesses rather than arguing his case to them was not improper and did not deny defendant the right to the benefits of jury nullification. There was no miscarriage of justice. The trial court's ruling did not prejudice the substantial rights of defendant, and did not violate a constitutional or statutory right.

*State v. Birgans*, 57 So. 3d at 485-86 (internal footnotes omitted).

Petitioner primarily assigns error to the trial judge's decision to narrow the scope of the questions he could ask to the witnesses.  In this respect, "a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness."  *Little v. Johnston*, 162 F.3d 855, 862 (5th Cir. 1998) (citation omitted).  Here, as the Second Circuit observed, Petitioner was attempting to argue the law with the witnesses in order to demonstrate to the jury that the initial vehicle stop was improper.  The trial court decided this Fourth Amendment issue prior to trial.  Petitioner was, therefore, arguing a moot point.  Consequently, even if Petitioner could show that the trial judge erred in limiting Petitioner's questioning, the judge's decision was not so extreme that it constituted a denial of fundamental fairness.  This claim should be **DENIED**.

D. Claim Four: Surveillance Video

Petitioner argues that the trial court should have required the State to present video evidence of the traffic infractions that led to Petitioner's traffic stop, rather than simply relying on the officers' testimony.  [doc. # 1, p. 12].  As the State puts it, Petitioner is arguing "that the

trial court should not allow eye witness testimony when technology exists to capture evidence via dash cameras and/or audio recording."  [doc. # 32-1, p. 4].

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Here, the Court can discern no constitutional violation.[6]  Petitioner fails to cite any federal law, Constitutional provision, or federal jurisprudence that would indicate that his claim arises under federal law.  This claim should be **DENIED**.

E. Claim Nine(A): Plea Bargain

Petitioner claims, essentially, that he wanted an opportunity to plead guilty to the charged crime and receive an agreed-upon sentence of five years.  [doc. # 32-1, p. 7].  The Second Circuit construed and analyzed Petitioner's claim thusly:

> Defendant alleges that a plea bargain had been made and accepted whereby he would plead guilty to possession of marijuana with intent to distribute in exchange for a five-year sentence and a reservation to appeal the issue of the motion to suppress pursuant to *Crosby, supra*.[7]  He claims that on April 6, 2009, at a hearing at the Ouachita Correctional Center, his attorney approached him with a plea agreement and explained the state had offered a plea of 10 years. Defendant allegedly told her that was too extreme and she offered to see if she could get the state to lower the plea. She allegedly came back and told him the state had offered a five-year sentence. He claims he said that would be all right with him if it included the right to plead guilty under *Crosby, supra*. He claims they went into court and he was shocked that his attorney had told the court he was willing to plead, but ADA Harkins was not willing

---

[6]  To the extent that these allegations amount to a Fourth Amendment claim, see Section "B" above.

[7]  *State v. Crosby*, 338 So. 2d 584, 586 (La. 1976), held that while a plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea, a defendant may nonetheless reserve his right to appeal an adverse prior trial court ruling.

to give him the *Crosby* plea. This is the basis for his argument that he was denied his right to plea bargain and invoke a *Crosby* plea.

* * *

The state asserts that there is nothing in the record to indicate that anything defendant alleges ever took place. The state also claims that even if this court were to accept his story as true, the record is devoid of any discussions of a guilty plea under *Crosby* with Judge Sharp, the judge who first had the case. Further, the state claims the minutes of April 6, 2009, do not even indicate that defendant was in court that date. The record reflects that on May 14, 2009, Judge Sharp held a hearing on a bond reduction, and the issue of a plea bargain was brought up. ADA Harkins, apropos of nothing, stated, "His plea offer is five years. Take it or leave it." ADA Harkins then stated, "I sent a letter offering ... dated March 30th where I say he could plead to ten years and I would not file a habitual bill." Shortly thereafter, ADA Harkins said, "But I backed off of that." On November 16, 2009, before Judge Sharp, the ADA indicated that an offer had been made, but it was rejected and withdrawn. Otherwise, this record is silent as to any plea bargain being reached.

* * *

In this case, there was never a meeting of the minds in regard to a plea bargain agreement. Instead, the state made defendant an offer, which he refused. He counteroffered, but the state did not accept it. It is within the discretion of the district attorney's office to decide whether to offer a defendant a plea agreement. No such agreement was ever reached. This assignment of error lacks merit.

*Birgans*, 57 So. 3d at 486-87 (internal footnote omitted).

Here, to the extent that Petitioner claims he is entitled to a plea agreement on sufficiently favorable terms, the Court observes the well-established principle that a defendant has no constitutional right to a plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Aside from that, the Court cannot discern any constitutional issue. Petitioner fails to demonstrate, or even allege, that the Second Circuit's adjudication resulted in a decision that was contrary to

14

clearly established federal law as determined by the Supreme Court.  This claim is not cognizable

and should be **DENIED**.

F. Claim 9(B): Waiver of Counsel

Petitioner contends that his waiver of appointed counsel was not voluntary.  [doc. # 1].

The Second Circuit analyzed Petitioner's claim as follows:

> [Defendant] contends that he lost faith in his court-appointed attorney because of
> differences they had concerning the direction in which his defense was heading. He
> complains that he found her so incompetent that he felt he had to take over his own
> defense; therefore, he unwillingly, although perhaps intelligently, sought to represent
> himself. The trial court appointed Ms. Brown as his standby counsel, even though he
> did not want her. Now he claims his waiver of counsel was involuntary. The record
> belies this.

> * * *

> [D]efendant knowingly and unequivocally waived his right to counsel. The trial court
> repeatedly warned him of the perils and pitfalls of self-representation. The subject
> was broached before and during trial. Defendant showed sophistication and
> intelligence in his decision to waive counsel. The trial court determined that he had
> represented himself in court before on a previous drug charge in another state.
> Because of his insistence on representing himself, the trial court allowed him the
> right to waive counsel, but insisted that his former attorney serve as standby counsel
> to answer any questions he might have about procedure. This was an appropriate and
> reasoned decision by the trial court, completely in accord with the fair administration
> of justice. This assignment of error lacks merit.

*Birgans*, 57 So. 3d at 488-89 (internal footnote omitted).

The Supreme Court has held that a criminal defendant has the constitutional right to

waive his right to counsel and present his own defense.  *Faretta v. California*, 422 U.S. 806, 817-

22 (1975).  Waiver of that right must be knowing and intelligent.  *Id.* at 835.  In *McQueen v.*

*Blackburn*, the Fifth Circuit summarized the factors that must be evaluated when considering the

sufficiency of a waiver:

> The court must consider the defendant's age and education, and other background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.

*McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir. 1985) (internal citations omitted).[8]

Here, Petitioner has failed to demonstrate that the Second Circuit's finding of waiver was contrary to clearly established Supreme Court precedent.  At a hearing on the matter, Petitioner stated that he was fifty-three years of age, could read and write, had taken over eighty hours of college courses at Oklahoma State University, held multiple sales jobs, and had represented himself at a prior trial.  [doc. # 34, p. 55-61].  The trial court then advised Petitioner of the charges against him, explained his right to counsel and the benefits of counsel, and discussed the ramifications of a waiver.  [doc. # 34-1, p. 1-12].  Considering all of this, and considering Petitioner's subsequent, unequivocal statement, "At this time I would waive counsel," the Court finds that the Second Circuit's holding was entirely reasonable.  *See id.* at 11-12.  Petitioner's claim should be **DENIED**.

G. Claim Ten: State *Habeas* Court Error

Petitioner claims that his post-conviction relief proceedings in the trial court were unconstitutional for several reasons: (1) the State withheld exculpatory evidence; (2) the trial

---

[8]  Although a number of courts require trial courts to conduct a hearing or colloquy with the defendant before finding a valid waiver, the Fifth Circuit does not.  In *Wiggins v. Procunier*, 753 F.2d 1318, 1320 (5th Cir. 1985), the Fifth Circuit held: "We are convinced that a colloquy between a defendant and a trial judge is the preferred method of ascertaining that a waiver is voluntary, knowing, and intelligent.  However, we have never required such a colloquy as a 'bright-line' test in cases of this type, and we decline to do so now.  In order to determine whether the right to counsel has been effectively waived, the proper inquiry is to evaluate the circumstances of each case as well as the background of the defendant."

16

court improperly denied his motion in limine; (3) the trial court erred in admitting certain

evidence; and (4) the prosecutors committed perjury.  [doc. # 1, p. 19-22].  Infirmities in state

*habeas corpus* proceedings, however, do not state a claim for federal *habeas corpus* relief.  *Vail*

*v. Procunier*, 747 F.2d 277 (5th Cir. 1984); *see Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.

1999).  Accordingly, this claim is not cognizable and should be **DENIED**.

### Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for *habeas*

*corpus* filed by Petitioner Frederic L. Birgans, [doc. # 1], be **DENIED and DISMISSED WITH**

**PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by

this Recommendation have fourteen (14) days from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court.  A party may respond to another

party's objections within fourteen (14) days after being served with a copy of any objections or

response to the District Judge at the time of filing.  A courtesy copy of any objection or response

or request for extension of time shall be furnished to the District Judge at the time of filing.

Timely objections will be considered by the District Judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT

WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN

AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING

ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL

CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  See 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Monroe, Louisiana, this 10th  day of November, 2014.

Karen L. Hayes
United States Magistrate Judge